**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

JAMES E. JONES                                    )
                                                  )
          Plaintiff,                              )
                                                  )
          v.                                      )          **Civil Action No. WGC-08-745**
                                                  )
MICHAEL ASTRUE                                    )
**Commissioner of Social Security**              )
                                                  )
          Defendant.                              )
_____)

**<u>MEMORANDUM OPINION</u>**

Plaintiff James E. Jones brought this action pursuant to 42 U.S.C. § 405(g) for review of a

final decision of the Commissioner of Social Security ("Commissioner") denying his claims for

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and

XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383c.  The parties consented to a referral to a United

States Magistrate Judge for all proceedings and final disposition.  *See* Document Nos. 3, 7-8.[1]

Pending and ready for resolution are Plaintiff's Motion for Summary Judgment, or in the Alternative,

Motion for Remand (Document No. 22) and Defendant's Motion for Summary Judgment (Document

No. 25).  No hearing is deemed necessary, *see* Local Rule 105.6 (D. Md. 2008), and therefore

Plaintiff's Motion for Hearing (Document No. 22) is **<u>DENIED</u>**.  For the reasons set forth below,

Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary

Judgment or, in the Alternative, Motion for Remand will be denied.

_____

[1] This case was subsequently reassigned to the undersigned.

1. **Background**.

On April 25, 2005 Mr. Jones protectively filed applications for DIB[2] and SSI alleging a disability onset date of June 30, 2004 due to diabetes, hypertension, hypercholesterolemia, and diminished lung capacity.  *See* R. at 18, 34, 39, 63, 94.  His applications were denied initially on August 29, 2005.  R. at 34-37.  On September 29, 2005 the Social Security Administration received Mr. Jones' Request for Reconsideration, R. at 38, and on June 26, 2006, the applications were denied again.  R. at 39-40.  On June 29, 2006 Mr. Jones requested a hearing before an Administrative Law Judge ("ALJ").  R. at 41.  On February 8, 2007 the ALJ convened a hearing, but delayed the proceeding for a psychological examination of Mr. Jones as well as to give Mr. Jones' counsel additional time to collect certain documents requested by the ALJ.  *See* R. at 209-15.  A subsequent hearing was convened on June 15, 2007.  *See* R. at 216-76.  Mr. Jones was represented by counsel. The ALJ obtained testimony from Mr. Jones and a vocational expert ("VE").  In the September 15, 2007 decision, the ALJ found Mr. Jones is not disabled within the meaning of the Act.  R. at 21.  Mr. Jones requested a review of the hearing decision.  R. at 9.  On January 24, 2008 the Appeals Council denied Mr. Jones' request for review, R. at 5-7, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Mr. Jones' claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920.  Mr. Jones bears the burden of demonstrating his

---

[2] Mr. Jones has acquired sufficient quarters of coverage to remain insured through December 31, 2009.  *See* R. at 13, 15, 50, 57.

disability as to the first four steps.  At step five the burden shifts to the Commissioner.[3]  If Mr. Jones'

claims fail at any step of the process, the ALJ does not advance to the subsequent step(s).  *Pass v.*

*Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  At step one the ALJ determined Mr. Jones has not

engaged in substantial gainful activity since June 30, 2004.  R. at 15.  The ALJ concluded at step two

that Mr. Jones' diabetes mellitus, borderline intellectual functioning, and unspecified depressive

disorder are severe impairments imposing significant work-related limitations.  *Id.*  The ALJ also

evaluated Mr. Jones' hypertension and breathing difficulties at step two.  The medical records

revealed Mr. Jones' hypertension is controlled by medication.  Nothing in the record indicates that

this condition imposes any significant work-related limitations and thus the ALJ found Mr. Jones'

hypertension is not a severe impairment.  *Id.*  As to Mr. Jones' breathing difficulties, this condition

resulted from a stabbing wound in 1968 causing occasional shortness of breath and difficulty when

Mr. Jones twists his torso.  Mr. Jones takes no medication for his breathing difficulties.  As

established by the record, Mr. Jones has performed substantial gainful activity despite the stab wound

and occasional breathing difficulties through June of 2004.  *Id.*  "Additionally, there is no evidence

that [Mr. Jones] sees a specialist in pulmonary medicine or has required emergent treatment for

breathing problems during the period at issue[].  No objective testing results are in the record to

support [Mr. Jones'] contention."  R. at 16.  The ALJ thus found Mr. Jones does not have a severe

---

[3] In his decision the ALJ wrote, "Although the claimant generally continues to have the burden of proving disability at [step five], a *limited burden* of going forward with the evidence *shifts to the Social Security Administration*."  R. at 15 (emphasis added).  This statement is contrary to Fourth Circuit's law.

> The applicant bears the burden of production and proof during the first four steps of the inquiry.  If he or she is able to carry this burden through the fourth step, the burden shifts to the [Commissioner] in the fifth step to show that other work is available in the national economy which the claimant could perform.

*Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citations omitted).

pulmonary impairment.

In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Mr. Jones' borderline intellectual functioning and unspecified depressive disorder.  "We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2) (2007).  The ALJ rated the degree of Mr. Jones' functional limitations in the four broad functional areas.  *See id.* §§ 404.1520a(c)(4), 416.920a(c)(4).  The ALJ determined Mr. Jones has a *mild* restriction in activities of daily living, a *mild* difficulty maintaining social functioning, *at most*, a *moderate* difficulty in maintaining concentration, persistence or pace, and *no* evidence of any episodes of decompensation. R. at 16.

Having rated the degree of functional limitations, the ALJ continued with the sequential evaluation process.  At step three the ALJ found Mr. Jones' impairments, *i.e.,* diabetes mellitus, borderline intellectual functioning and unspecified depressive disorder, are not severe enough to meet or medically equal the criteria of any of the impairments listed in Appendix 1 of the Regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.  R. at 16.  Specifically the ALJ determined Mr. Jones' "diabetes mellitus does not remotely approach listing-level severity."  *Id.*  The ALJ failed to identify the specific listing.  The Court presumes the ALJ compared Mr. Jones' condition to Listing 9.08, *Diabetes mellitus*.  The ALJ noted Mr. Jones has a non-insulin dependent diabetes mellitus.  R. at 18.  The ALJ further noted that "[Mr. Jones] alleges inability to get blood sugar levels below 300, but repeated blood testing by the treating physicians documents levels in the mid-100 range despite the fact that [Mr. Jones] does not use insulin."  R. at 20.

4

Continuing with step three, the ALJ next addressed Mr. Jones' mental impairments by following the special technique. "After we rate the degree of functional limitation resulting from your impairment(s), we will determine the severity of your mental impairment(s)." 20 C.F.R. §§ 404.1520a(d), 416.920a(d) (2007). The ALJ assessed Mr. Jones' mental impairments in relation to Listings 12.04, *Affective Disorders*, and 12.05, *Mental retardation*. Regarding Mr. Jones' unspecified depressive disorder the ALJ determined Mr. Jones fails to satisfy paragraph C[4] of Listing 12.04 for the following reasons.

> [Mr. Jones] has been diagnosed with depressive disorder, but there is no evidence to suggest that he has ever sought treatment from a mental health professional. Global Assessment of Functioning is rated as 65, and medical assessments completed by Dr. Rodriguez and Dr. Decker indicate that [Mr. Jones] has few significant work-related limitations attributable to mental impairment. Pharmacy printouts of medications dispensed to [Mr. Jones] fail to show any regular use of psychotropic medications, again negating the severity of any substantial mental impairment.

R. at 20 (citation omitted). Further, the ALJ noted Dr. Rodriguez opined Mr. Jones' unspecified depressive disorder was attributable to the lost of employment and resulting financial stress. R. at 19. Similarly Dr. Decker attributed Mr. Jones' mild depression to problems with his former

---

[4] "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

employer and inability to obtain Social Security benefits.  *Id.*

With regard to Mr. Jones' borderline intellectual functioning the ALJ found Mr. Jones' impairment does not meet either Listing 12.05, paragraph B (because Mr. Jones' valid verbal, performance, or full scale IQ is not 59 or less) or Listing 12.05, paragraph C (because Mr. Jones' valid verbal, performance or full scale IQ is not between 60 and 70 and Mr. Jones does not have a physical or other mental impairment imposing additional and significant work-related limitations of function).  R. at 17.  As documented in the case record, when Dr. Rodriguez administered the WAIS-III testing, he found Mr. Jones has a verbal IQ of 85, performance IQ of 85 and a full scale IQ of 84. R. at 165-66.  Dr. Rodriguez noted Mr. Jones' intellectual functioning falls under the "Low Average" range.  R. at 169.  When Dr. Decker administered the WAIS-III testing to Mr. Jones, the results were a verbal IQ of 85, a performance IQ of 76 and a full scale IQ of 79.  R. at 181.  Dr. Decker characterized these results as "Low Average to Borderline" IQ.  R. at 182.

Next the ALJ determined Mr. Jones' residual functional capacity ("RFC").  Based on the ALJ's review of the case record he found Mr. Jones is able to lift and carry 25 pounds frequently and occasionally lift and carry 50 pounds.  The ALJ also found Mr. Jones is able to walk, stand or sit for six hours in an eight hour period.  "As there are no significant postural, manipulative, visual, communicative, or environmental limitations, [Mr. Jones] is physically able to perform the full range of work at the medium level of exertion."  R. at 20.

The ALJ then considered how Mr. Jones' mental impairments affects his RFC.  "If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity."  20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) (2007).

In the decision the ALJ summarized the opinions of Dr. Rodriguez and Dr. Decker with regard to the impact of Mr. Jones' mental impairments on his ability to work. Dr. Rodriguez opined the limitations imposed by Mr. Jones' mental impairment "would not preclude performance of work as a security guard, machine operator, delivery driver, mail clerk or auto mechanic." R. at 19 (citation omitted); *see* R. at 169. Dr. Decker opined, despite Mr. Jones' moderate limitations in his ability to remember, understand and carry out complex instructions and to exercise judgment regarding complex work-related decisions, Mr. Jones otherwise has only mild limitations in specific functions necessary to maintain gainful employment. R. at 20; *see* R. at 184. The ALJ incorporated the above-cited limitations within the RFC determination.

> Although [Mr. Jones] may have deficiencies of concentration, persistence, or pace, there is no objective evidence to support a conclusion that they are more than moderate in severity. Thus, [Mr. Jones'] capacity for work at the medium level of exertion is reduced only by inability to perform jobs that are skilled in nature.

R. at 20.

At step four the ALJ found that, based on Mr. Jones' RFC, he is capable of performing his past relevant work as an assembler or a security guard. Accordingly, the ALJ concluded Mr. Jones is not disabled within the meaning of the Act. R. at 21.

3. **Standard of Review**.

The role of this Court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Pass v. Chater*, 65 F.3d at 1202; *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting

*Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays*, 907 F.2d at 1456.  This Court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

4.  **Discussion**.

      *A.    Past Relevant Work*

Mr. Jones argues the ALJ impermissibly classified his past relevant work as three distinct jobs rather than three component parts of one job.  Citing *Valencia v. Heckler*, 751 F.2d 1082 (9th Cir. 1985), Mr. Jones asserts his situation is analogous to *Valencia* because the ALJ's step four determination in essence recognized Mr. Jones' capacity to perform one or more tasks associated with his previous job.  Mr. Jones contends he is unable to perform all tasks associated with his previous job.

During the June 15, 2007 administrative hearing Mr. Jones testified about his past relevant work.

> Q:   Okay.  Your past work experience – – you worked for the Hedwin Corporation, I believe for 31 years?  Is that correct?
>
> A:  Correct.
>
> Q:  And while at Hedwin Corporation you primarily did two types of jobs; you worked as a *material handler* – –
>
> A:  Yes.
>
> Q:   – – for the majority of the time – –
>
> A:  Yes.

> Q:   – – and then for a couple of years at the end you worked as an *assembler*?  Is that correct?
>
> A:   That's correct.

R. at 220-21 (emphasis added).  Mr. Jones testified that he worked an eight hour shift as a material handler.  After describing the tasks performed for this position, Mr. Jones answered questions about the assembler position.

> Q:   Okay.  And then it's my understanding in the last two years or so of your employment, you worked more as an assembler?  Is that correct?
>
> A:   Yes.
>
> Q:   Okay.  Working as an assembler, was that also an eight hour shift?
>
> A:   Yes it was.

R. at 223.

Mr. Jones' counsel inquired further about another position Mr. Jones had identified.

> Q:   Okay.  Now I also saw when you listed your different jobs that you listed as, as also working in, in the security guard [sic] for Hedwin.  Did you separately work as a security guard or did you have some security guard duties while also working as a material[] handler?
>
> A:   Okay, the way, the way it worked, it was a part-time job, okay. They would, they would set up a schedule for holidays and weekends and I, I would wear a uniform when I would be a security guard.  It was like a turn key security guard where I'd go to each destination and turn the key.
>
> Q:   How long did you do that for?
>
> A:   15 years.

R. at 226.

9

Toward the conclusion of the hearing the ALJ asked the VE to summarize Mr. Jones' background based on documentary evidence and Mr. Jones' testimony.   The VE responded as follows:

> Yes.   Your Honor the claimant has a 12th grade high school education, is currently 59 years old which is a person of advanced age, and the following work history:   the claimant has worked as a *material handler*, that work was heavy, it was semi-skilled. Based on the file the claimant operated a fork lift and a hydraulic lift and that would have made it in the low end of semi-skilled.  The claimant has also worked as an *assembler*; that work was medium and unskilled. The claimant has also worked as a, a *security guard* and that work as performed was light and unskilled.  And that concludes the work history.

R. at 271 (emphasis added).

As part of his applications seeking DIB and SSI Mr. Jones completed Form HA-4633, *Claimant's Work Background*.  Mr. Jones identified his employer as Hedwin Corporation.  He listed his dates of employment as January 25, 1973 to June 30, 2004.   Under the column "Duties Performed" Mr. Jones wrote security guard, line operator, material handler, mechanical trainee, towmotor operator and machine operator.  R. at 104.

Mr. Jones argues the ALJ unfairly considered the duties as a security guard since it was seasonal part-time work performed on the weekends and during the holidays.  Mr. Jones asserts it is unlikely he even earned substantial income performing such duties.  The Commissioner notes Mr. Jones carries the burden at step four.  No evidence has been produced by Mr. Jones that the security guard detail was not substantial gainful activity.  Mem. Supp. Def.'s Mot. Summ. J. ("Def.'s Mem.") at 9.  Working a part-time job does not automatically mean the work cannot constitute substantial gainful activity.  "Your work may be substantial *even if it is done on a part-time basis* or if you do

less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. §§ 404.1572(a), 416.972(a) (2007) (emphasis added).  Mr. Jones worked part-time as a security guard for 15 years, not an insignificant period of time.

It is undisputed that Mr. Jones stopped working on June 30, 2004.[5]  *See* R. at 15, 64.  As part of his applications seeking DIB and SSI benefits, Mr. Jones completed Form SSA-3369 EDCS, *Work History Report*.  In response to a question about work performed in the previous 15 years before becoming unable to work, Mr. Jones listed the job title of "material handler" for the period of 1976 to 2000.  R. at 60.  Although Mr. Jones continued to work for the same corporation for an additional two and a half years, he omitted the job title of his position for the years 2001 - June of 2004.  From Mr. Jones' testimony it is certain that during these latter years Mr. Jones worked as an assembler.

The duties of an assembler are separate and distinct from the duties of a material handler. *Compare* R. at 221-22 *with* R. at 223-26.  The duties of an assembler were not component parts of the duties of a material handler.  Likewise, the duties of a security guard were separate and distinct

---

[5] Mr. Jones told Dr. Bailey that he was fired after working for 31 years for his employer.  R. at 106. Similarly Mr. Jones informed Dr. Rodriguez he was fired from his job.  R. at 164.  And during his appointment with Dr. Decker Mr. Jones disclosed that "he was dismissed from his employment after three 'incidents' the last one being a sexual harassment charge."  R. at 180.  However at the hearing Mr. Jones indicates his termination was based on performance.

> Q:  Now Mr. Jones you stopped work and what was the circumstance involved in your stopping work with Hedwin Corporation?  What happened?
>
> A:  Well after, after I started, you know, reaching a certain age, my illness started impairing my work.  So as a result, I got a performance warning and then if you get three performance warnings in one year, you're subject to termination and because I been around so long and I, I been really working hard to try to avoid things like that and – –
>
> Q:  So you lost your job because of poor performance?
>
> A:  Yes.

R. at 230.

from the duties of a material handler as well as separate and distinct from the duties of an assembler, and was neither a component part of the material handler position nor a component part of the assembler position.  In short, although Mr. Jones worked for one employer, he performed three distinct jobs, each having specific tasks or component parts.  The Court finds no error by the ALJ in recognizing the three distinct jobs Mr. Jones held based, not only on the VE's characterizations from the documentary evidence but also Mr. Jones' own testimony.

B.     *Evaluation of Mr. Jones' Mental Impairment*

Mr. Jones contends the ALJ failed to evaluate his (Mr. Jones') mental impairment in accordance with Social Security Ruling ("SSR") 96-8p, *Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*.  Specifically, Mr. Jones asserts, although the ALJ found that he (Mr. Jones) has a *moderate* difficulty in maintaining concentration, persistence or pace, *see* R. at 16, the only limitation in work-related activities the ALJ found was Mr. Jones' inability to perform skilled work.  Excluding his work as a material handler, an occupation the VE characterized as the low end of semi-skilled work, Mr. Jones notes his other past relevant work has been unskilled.  "Therefore, the ALJ's Mental Residual Functional Capacity (MRFC) of Jones stands revealed as bogus.  Jones has always been incapable of work that was skilled in nature because he has never done skilled work."  Mem. P. & A. Supp. Pl.'s Mot. Summ. J. ("Pl.'s Mem.") at 5.  According to Mr. Jones, despite two psychological evaluations revealing individualized mental impairments, the ALJ failed to address them in the RFC.

In the decision the ALJ included the following narrative discussion describing the evidence supporting the ALJ's conclusions regarding Mr. Jones' RFC in light of his mental impairment.

> [Mr. Jones] has been diagnosed with depressive disorder, but there is
> no evidence to suggest that he has ever sought treatment from a

12

mental health professional.  Global Assessment of Functioning is rated as 65, and medical assessments completed by Dr. Rodriguez and Dr. Decker indicate that [Mr. Jones] has few significant work-related limitations attributable to mental impairment.  Pharmacy printouts of medications dispensed to [Mr. Jones] (Exhs. 7F, 8F, 9F) fail to show any regular use of psychotropic medications, again negating the severity of any substantial mental impairment.  After consideration of all evidence of record, the undersigned accords great weight to the medical assessment provided by the treating physician and concludes that [Mr. Jones], who has never had any episodes of decompensation, has only mild limitations in social functioning and activities of daily living.  Although [Mr. Jones] may have deficiencies of concentration, persistence, or pace, there is no objective evidence to support a conclusion that they are more than moderate in severity.  Thus, [Mr. Jones'] capacity for work at the medium level of exertion is reduced only by inability to perform jobs that are skilled in nature.

R. at 20.

Mr. Jones claims the ALJ failed to include in the RFC determination Dr. Rodriguez's finding that Mr. Jones' processing speed abilities are not as well developed as his peers.  Pl.'s Mem. at 5; R. at 167.  The Commissioner, in his cross-motion for summary judgment, notes Mr. Jones fails to explain this finding in light of Dr. Rodriguez's complete assessment.  Def.'s Mem. at 11-12.

Dr. Rodriguez, Mr. Jones' treating physician, did not suggest that Mr. Jones' less developed processing speed abilities would affect Mr. Jones' work-related activities.  Although Dr. Rodriguez noted Mr. Jones' depression (stemming from loss of employment and resulting financial stress) may inhibit Mr. Jones' capacity to self motivate and take initiative, overall, Dr. Rodriguez opined Mr. Jones has the skills to work independently.

Mr. Jones has the intellectual skills necessary to be able to work on an independent basis.  He showed no difficulty following complex instructions and directions.  Consequently, once he has been given an assignment and understands his responsibilities, he should have no difficulty with follow through on an independent basis.

R. at 169.

During his session with Dr. Rodriguez Mr. Jones disclosed his desire to work as a security guard.  Based on the results of the evaluation, Dr. Rodriguez opined Mr. Jones is able to work as a security guard.  "Mr. Jones could also work in a number of other jobs as well including returning to work as a machine operator.  He could work as a delivery driver, clerk in a mail room, and auto mechanic to name but a few options."  *Id.*

As to Dr. Decker's evaluation Mr. Jones argues the ALJ failed to consider Dr. Decker's finding that Mr. Jones "tends to be weak in terms of attentiveness to detail[.]"  R. at 182; Pl.'s Mem. at 5.  Mr. Jones however cites a small portion of Dr. Decker's finding.  The results of the WAIS-III testing showed the following:

> Functional capacity is in [the Low Average and Borderline] range. He tends to be weak in terms of attentiveness to detail, *but* his other scores are fairly good and reflect his ability to understand and follow instructions in performance of simple tasks.

R. at 182 (emphasis added).  The Court finds the ALJ's RFC finding as to Mr. Jones' mental impairment is supported by substantial evidence.

C.    *ALJ's Finding of RFC at the Medium Level of Exertion*

Mr. Jones claims the ALJ improperly accorded controlling weight to a non-examining physician over Mr. Jones' treating physicians.  By relying on the non-examining physician's opinion, the ALJ concluded Mr. Jones could perform work at the medium level of exertion.  If the ALJ had not rejected the treating physicians' opinions, the ALJ would not have found Mr. Jones capable of performing medium work.

In the decision the ALJ included the following narrative discussion describing the evidence supporting the ALJ's conclusions regarding Mr. Jones' RFC in light of his exertional limitation.

[Mr. Jones] alleges inability to lift more than a gallon of milk or walk more than 4-5 blocks before resting, but he told Dr. Rodriguez in December 2005 that he has no difficulty stooping, bending, standing for extended periods, or walking long distances. [Mr. Jones] alleges inability to get blood sugar levels below 300, but repeated blood testing by the treating physicians documents levels in the mid-100 range despite the fact that [Mr. Jones] does not use insulin. As noted above, his hypertension is controlled with medication, and there is no objective evidence of a pulmonary impairment. Clinical findings at the consultative examination in August 2005 were unremarkable, as [Mr. Jones] evidenced good range of motion of the neck, lower back, and all joints of the upper and lower extremities with no neurological deficits. Although the treating physician indicated in December 2006 that [Mr. Jones] is unable to perform work above the light level of exertion, he noted that such limitations were based on [Mr. Jones'] subjective complaints. No objective dat[a] exists to support this restricted exertional level. Usual activities, including shopping, meal preparation, and housework, are not consistent with disabling symptoms. Additionally, although [Mr. Jones] reported that he lost his job because he was unable to keep up with the work, he told Dr. Decker in April 2007 that he was fired for sexual harassment and two additional charges. After consideration of all evidence of record, the undersigned accords greater weight to the opinion of the reviewing physician (Exhibit 2F) and concludes that [Mr. Jones] is able to frequently lift and carry 25 pounds (with occasional lifting/carrying of 50 pounds) and sit, stand, or walk for 6 hours in an 8-hour period. As there are no significant postural, manipulative, visual, communicative, or environmental limitations, [Mr. Jones] is physically able to perform the full range of work at the medium level of exertion.

R. at 20.

The record contains two opinions from Mr. Jones' treating physicians, Dr. Seunarine, dated April 26, 2005, and Dr. Lacey, dated December 27, 2006. *See* R. at 119-22, 160-63. Mr. Jones, at the request of the Maryland Disability Determination Services ("MDDS"), was examined and evaluated by Dr. Purcell Bailey, on August 5, 2005. *See* R. at 105-09. At the initial stage, Dr. James Biddison reviewed Mr. Jones' case record and completed Form SSA-4734-BK, *Physical Residual Functional Capacity Assessment*, on August 22, 2005. *See* R. at 111-18. And, at the reconsideration

stage Dr. Lee Robbins[6] reviewed Mr. Jones' case record and completed Form SSA-448, *Request for Medical Advice*, on June 21, 2006.  *See* R. at 158-59.

The Social Security Administration generally gives more weight to a treating physician's opinion than to the opinion of a non-treating physician. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). "Generally, we give more weight to opinions from your treating sources, since these source are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2007).  In addition to the length, nature and extent of the treatment relationship, the Social Security Administration assesses the supportability, consistency, specialization and other factors in weighing medical opinions.

The ALJ does not refer to Dr. Seunarine's opinion of April 26, 2005 in the narrative discussion about Mr. Jones' RFC.  This opinion is noted in the decision but only with regards to the four broad areas of functional limitations.  *See* R. at 18.  As to the opinion of Mr. Jones' other treating physician, Dr. Lacey, in summarizing the medical records the ALJ noted,

> In a "Medical Assessment of Ability to do Work-Related Activities (Physical)" completed on December 27, 2006, the treating physician opined that [Mr. Jones] is able to sit, stand, or walk for 6 hours in an 8-hour period.  Although the physician imposed additional limitations on lifting, carrying, climbing, stooping, crouching, kneeling, and crawling, he indicated these restrictions were based on [Mr. Jones'] subjective complaints of weakness (Exhibit 5F).

---

[6] On the first page of Form SSA-448 Dr. Biddison is identified as the "reviewer."  R. at 158.  However on the second page of Form SSA-448 Dr. Biddison's name is not listed at the bottom of the form.  Instead the identified individual is Lee Robbins, M.D.  R. at 159.  Thus it is not clear to the Court what role, if any, Dr. Biddison had at the reconsideration level.

R. at 19.

Dr. Lacey did not physically examine Mr. Jones during the December 27, 2006 appointment. On the *Medical Assessment of Ability to Do Work-Related Activities (Physical)* Dr. Lacey, in response to the question, "If yes what are the medical findings that support this assessment?" answered, "[Mr. Jones] states 'too weak.'" R. at 160-61. This answer was provided to three distinct inquiries: (1) Are Lifting/Carrying affected by impairment, (2) Are Standing/Walking affected by impairment and (3) How often can the individual perform the following Postural Activities?" *Id.* Dr. Lacey found Mr. Jones can lift and carry 20 pounds, a maximum of 15 pounds occasionally and a maximum of 10 pounds frequently. What is left unexplained is how Dr. Lacey made these findings.

When the ALJ assessed Mr. Jones' RFC, he rejected Dr. Lacey's opinion as to Mr. Jones' exertional limitation on the ground of a lack of supportability. "Although the treating physician indicated in December 2006 that [Mr. Jones] is unable to perform work above the light level of exertion, he noted that *such limitations were based on [Mr. Jones'] subjective complaints. No objective dat[a] exists to support this restricted exertional level*." R. at 20 (emphasis added). The ALJ properly did not give controlling weight to Dr. Lacey's opinion because that opinion is based on Mr. Jones' subjective complaints without any supporting medical findings. "[I]f a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

Dr. Bailey, an internist, examined Mr. Jones at the request of MDDS. On August 5, 2005 Dr. Bailey noticed Mr. Jones' gait was normal and further that Mr. Jones walked without a cane or

walker.  Dr. Bailey also observed Mr. Jones sitting appropriately.  R. at 107.  Dr. Bailey tested Mr.

Jones' range of motion in his shoulders, elbows, wrists, hips, cervical spine and lumbar spine.  Test

results revealed Mr. Jones has a full range of motion.  Mr. Jones' grip strength and upper extremity

strength were normal and he exhibited no lower extremity muscle weakness.  R. at 108-09.  Upon

completing the examination Dr. Bailey opined,

> With regard to his ability to lift, grasp, hold and carry, he is
> unimpaired.  With regard to his ability to walk, stand, climb or crawl,
> he is mildly impaired due to left chest pain with twisting his upper
> torso.  No significant impairment could be documented.

R. at 107.

Despite Dr. Bailey's recommendation of mild restrictions for walking and standing due to

chest pain in upper torso, Mr. Jones does not describe having chest pain but instead has experienced

breathing difficulties.  This condition however occurs only with heavy lifting.

> Q:  You don't take any medicines to help you breathe do you, Mr.
> Jones?
>
> A:   Well, I, I don't, I don't, I don't have to take anything for
> breathing.  Only, only time I have problems with that is when I do
> heavy lifting.

R. at 256.  Mr. Jones acknowledged working for decades with numbness in his rib cage and further

admitted to not taking any pain medication.  R. at 265.

The non-examining physician, Dr. Biddison, reviewed Mr. Jones' case record and disagreed

with Dr. Bailey's opinion of a mild restriction for walking and standing.  Dr. Biddison noted "[n]o

significant musculoskeletal impairment documented."  R. at 117.

The Social Security Administration considers evidence from non-examining physicians as

opinion evidence.  20 C.F.R. §§ 404.1527(f), 416.927(f).  Such opinions "are to be considered and

addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." *SSR 96-6p*, 1996 WL 374180 at *4. Moreover, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at *3.

A review of the case record supports the ALJ according greater weight to Dr. Biddison's opinion than to the opinions of  Dr. Bailey (Mr. Jones' examining physician) or Dr. Lacey (Mr. Jones' treating physician).  Although Dr. Rodriguez's speciality is psychology, when Dr. Rodriguez evaluated Mr. Jones on December 1, 2005, Dr. Rodriguez observed Mr. Jones walk to and from the examination room without any difficulties.  When questioned by Dr. Rodriguez, Mr. Jones "denied problems with walking long distances, standing for extended periods, stooping, bending and lifting." R. at 165.  In contrast, when Mr. Jones saw Dr. Becker, a psychologist, on April 4, 2007, Mr. Jones disclosed he had problems lifting, walking as well as having low energy and becoming short of breath.  R. at 180.

Mr. Jones described his activities of daily living by completing Form SSA-3373-BK, *Function Report - Adult*, on June 4, 2005.  The household chores performed by Mr. Jones include washing dishes, mowing the lawn, cleaning, washing clothes and ironing.  He does not need any assistance in doing these chores.  Mr. Jones also prepares his meals three times a day without any assistance.  R. at 72.  Mr. Jones drives a car and shops in stores and by computer.  R. at 73.  On a subsequent Form SSA-3373-BK, completed on January 28, 2006, Mr. Jones continues to drive his friend to and from work, prepare his meals three times a day, perform household chores four times a week and shop at least three times a week.  R. at 85, 87-88.

> [B]ecause nonexamining sources have no examining or treating relationship with you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions.   We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.

20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) (2007).

The case record supports the ALJ according greater weight to Dr. Biddison's opinion. "Because there were no objective medical findings to support Dr. Bailey's restriction recommendation, the ALJ was correct to give greater weight to Dr. Biddison who noted the absence of any objective support for finding such a limitation."   Def.'s Mem. at 18.   And, as the Commissioner also notes, "neither Mr. Jones' treating physician, Dr. Lacey, nor the [M]DDS examining physician, Dr. Bailey, offered any objective evidence to support Mr. Jones' subjective complaints."   *Id.*   The ALJ did not err in finding Mr. Jones can perform a full range of work at the medium level of exertion.

5. **Conclusion**.

Substantial evidence supports the decision that Mr. Jones is not disabled.   Accordingly, Defendant's motion for summary judgment will be granted.

Date:____July 22, 2009_____                    _____/s/_____
                                                                        WILLIAM CONNELLY
                                                                        UNITED STATES MAGISTRATE JUDGE